# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARK A. WEISS,

                              Plaintiff,

v.                                                          Case No. 16-CV-219-JPS

RUTH SPIELVOGEL-DONALDS,
LAURIE KUHN, JOHN LANGDON,
MARK KAUTZMANN, and MATTHEW          **ORDER**
KANGAS,

                              Defendants.

## 1.      INTRODUCTION

Plaintiff Mark A. Weiss ("Weiss"), a prisoner, brings this action
pursuant to 42 U.S.C. § 1983 challenging the conditions imposed on him in
December 2009 as part of the community supervision portion of a state
criminal sentence. At the core of Weiss' complaint is his disagreement with
the manner in which defendant parole agents Ruth Spielvogel-Donalds
("Spielvogel-Donalds"), Laurie Kuhn ("Kuhn"), John Langdon
("Langdon"), and Mark Kautzmann ("Kautzmann") (collectively, the "state
defendants"), and defendant social worker Matthew Kangas ("Kangas"),
applied the conditions of community supervision to him; he claims they did
so unconstitutionally.[1] Weiss also alleges that certain of the state defendants
acted unconstitutionally when they caused his community supervision to
be revoked. The state defendants filed a motion for summary judgment on

---

[1]The spellings of the defendants' names, taken from their filings, reflect
corrections of misspellings in the plaintiff's complaint.

December 30, 2016. (Docket #40). One the same day, Kangas, represented by separate counsel, filed a motion for judgment on the pleadings and, in the alternative, a motion for summary judgment. (Docket #47). Weiss filed a timely response on January 20, 2017, though it is not clear to which motion Weiss intended to respond. (Docket #53). The state defendants and Kangas filed their replies on February 6 and 7, respectively. (Docket #54, #55). Weiss then filed a second, untimely, response brief and affidavit on March 13, 2017.[2] (Docket #57). The motions are fully briefed and, for the reasons stated below, the Court will grant both Kangas' and the state defendants' motions for summary judgment.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688,

---

[2]Civil Local Rule 56(b)(2) requires the non-movant's response to a summary judgment motion be filed within 30 days of service of the motion.

691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3.    **BACKGROUND**

3.1    **Plaintiff's Failure to Dispute the Material Facts**

The relevant facts are undisputed because Weiss failed to dispute them. In the Court's scheduling order, entered August 26, 2016, Weiss was warned about the requirements for opposing a motion for summary judgment. (Docket #29 at 1-2). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission.

In the state defendants' motion for summary judgment, they too warned Weiss about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #40). He was provided with additional copies of those Rules along with the state defendants' motion. (Docket #40-1). In connection with their motion, the state defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #42). It contained short, numbered paragraphs concisely stating those facts which the defendants proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.* Defendant Kangas also filed, in connection with his motion for summary judgment, a supporting statement of material facts that complied with the applicable procedural rules. (Docket #50). It, too, contained short, numbered paragraphs concisely stating those facts which Kangas proposed

to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

Weiss submitted a six-page "memorandum of law" in response, though it is unclear whose motion his submission is in response to. (Docket #53). In his submission, Weiss makes largely incoherent arguments about immunity, discrimination, ex-post facto laws, double jeopardy, and due process that were not part of his complaint. *Id*. Very little of Weiss' submission appears to be relevant to the case at hand. Further, it is not sworn and is not accompanied by any documents or other evidence. Weiss' response does not attempt to address the defendants' statements of fact.

Weiss then filed an untimely second "memorandum of law," twenty pages in length, which sets out in barely comprehensible prose various facts and legal theories that do not relate in a meaningful way to the claims in his complaint. (Docket #57). This second memorandum includes a "verification" that Weiss "declare[s] that this motion of consolidations, and rebuttals to refute the esstopple [sic] of these defendants unclean hands who ripped me off and cheated me, is true and completely correct under penality [sic] of perjury 28 U.S.C. pursuant 1746." *Id.* at 20. Even if the Court were to overlook the untimeliness of Weiss' second response, and Weiss' disobedience of the rule allowing only one brief in response to a motion for summary judgment, the Court nonetheless finds this second memorandum insufficient to contest the defendants' proposed facts. Weiss has not directed the Court to the facts he disputes, and he has not provided the Court with evidence supporting those disputes or his own proposed facts.

Despite being twice warned of the strictures of summary judgment procedure, Weiss ignored those rules by failing to properly dispute the defendants' proffered facts with citations to relevant, admissible evidence.

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will, unless otherwise stated, deem the defendants' facts undisputed for purposes of deciding their motions for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 3.2 Relevant Material Facts[3]

In 1995, Weiss was found not guilty by reason of insanity of the second-degree sexual assault of his mother. This conviction required Weiss to register as a sex offender. After his release, Weiss was convicted of stalking in 2008, for which he served a term of imprisonment. He was released to community supervision on December 15, 2009. Upon his release, Weiss' assigned parole agent Laurie Kuhn ("Kuhn") temporarily placed Weiss at Columbus House, a halfway house for offenders released from prison. He spent approximately fifty days at Columbus House before obtaining his own residence in February 2010.

As part of the conditions of his release on community supervision, Weiss signed and agreed to be bound by two sets of rules: the standard community rules of supervision and the sex offender rules. The rules required Weiss to participate in sex offender treatment, including group therapy. During a treatment session in February 2010, Weiss refused to admit his offense in violation of his rules and the expectations of the

---

[3]These facts are taken from the state defendants' proposed findings of fact, (Docket #42), unless otherwise noted.

treatment provider and was removed from the treatment session. The social worker acting as the facilitator for Weiss' treatment group, Kangas, recorded the incident in his attendance log for that day. Weiss was placed into custody in county jail, at the direction of Weiss' new parole agent, Langdon, and possibly Spielvogel-Donalds as Langdon's supervisor (the state defendants' proposed facts are not clear on this point), for violating the conditions of his community supervision. Two days later, Weiss was released when he signed a written statement admitting his offense and agreeing to cooperate with treatment going forward.

Also in February 2010, Langdon, and Spielvogel-Donalds as his supervisor, put a no contact order in place between Weiss and an older woman he identified as his girlfriend, Maria Scozzoro ("Scozzoro"). Langdon and Kuhn had spoken with Scozzoro and both were concerned that Weiss was forming an unhealthy attachment to a vulnerable older woman that might impede his continued treatment and rehabilitation. Scozzoro had inquired about pursuing a sexual relationship with Weiss, despite being twenty years his senior, and Langdon was concerned that Scozzoro resembled Weiss' prior victim in age.

On March 24, 2011, Langdon received a report from Weiss' neighbor, a young woman, that Weiss had exposed himself to her and encouraged her to perform oral sex on him when she asked to borrow a cigarette. The neighbor also reported that Weiss had attempted to force his way into her apartment. Langdon referred the matter to the police and then, after consulting with Spielvogel-Donalds, pursued revocation of Weiss' community supervision. Langdon completed the appropriate paperwork and participated in the preliminary and final revocation hearings, where Weiss had representation.

The administrative law judge presiding over the revocation proceeding declined to revoke Weiss' parole. Weiss was then released back into the community, having received custody credit for his time in jail, and placed on electronic monitoring. Spielvogel-Donalds assigned parole agent Kautzmann to replace Langdon as Weiss' agent. Weiss signed another copy of the rules of community supervision and the standard sex offender rules with Kautzmann on August 1, 2011.

In October 2011, Kautzmann had Weiss taken into custody after he learned that Weiss had violated the conditions of the electronic monitoring program, had left Kenosha County without permission, and had engaged in stalking behavior. Kautzmann, in consultation with Spielvogel-Donalds, elected to pursue revocation. Weiss admitted to numerous violations in his own written statement. Following a hearing, an administrative law judge revoked Weiss' supervision and he was sent to prison.

On February 24, 2016, Weiss filed his complaint in this case, challenging several conditions of his 2009-'11 community supervision, as well as the decisions by the defendants to pursue revocation on the two occasions described above. (Docket #1).[4] Specifically, Weiss takes issue with the following: (i) being required to register as a sex offender; (ii) being required to attend a sex offender treatment group; (iii) being required to wear an ankle monitor; (iv) being placed in a halfway house for the first

---

[4]According to the state defendants' proposed facts and supporting declarations, as well as the Wisconsin Offender Locator, *available online at* http://offender.doc.state.wi.us/lop/home.do, Weiss was released from custody in September 2016, during the pendency of this lawsuit. (Docket #42 at 22). On July 26, 2017, Weiss notified the Court that he would be returning to the Kenosha County Jail, but subsequently informed the Court that he has been "binded over." (Docket #65 and #67). According to the Wisconsin Offender Locator, Weiss is currently on active community supervision.

month of his community supervision, where he claims to have been under house arrest; (v) the "arbitrary" decision of Spielvogel-Donalds and Langdon to seek a no-contact order between Weiss and Scozzoro; (vi) the decision by Spielvogel-Donalds and Langdon to have him "locked up" because he "really didn't want to talk about" his sex offenses with Kangas during a treatment session; (vii) having his job at Wendy's "taken . . . away" from him by Langdon, Spielvogel-Donalds, and Kautzmann; (viii) spending time in jail during the pendency of revocation proceedings that Langdon initiated based on allegations of harassment from Weiss' neighbor; and (ix) returning to custody upon revocation of his community supervision. *Id.*

The defendants provided evidence in the form of declarations and exhibits contesting many of the allegations in Weiss' complaint. (Docket #42-46, 49-50). As noted earlier, Weiss did not respond in a meaningful way to the defendants' proposed facts, and therefore the defendants' facts will be considered undisputed. Further discussion of specific facts relating to each of Weiss' allegations will be set forth below where appropriate.

4. **ANALYSIS**

4.1 **Matthew Kangas**

At all times relevant to this action, Kangas was a licensed clinical social worker in the State of Wisconsin and owned a counseling service, that, through various contracts, provided sex offender programming and treatment for the Wisconsin Department of Corrections. (Docket #50). In and around 2010, Kangas facilitated a weekly treatment group in Kenosha, Wisconsin, in which Weiss was a participant. *Id.* At the February 8, 2010 treatment session, Weiss failed to admit sexual intent regarding his sex offenses, as is required under the treatment protocol that Weiss signed. *Id.*

Weiss was removed from the group for the day, and Kangas recorded the removal in his attendance log. *Id.*

Weiss alludes to this incident in his complaint, as well as another incident allegedly involving Kangas. The following two allegations are the only allegations in Weiss' complaint relating to Kangas:

- "Ruth Donalds, and Agent John Langdon, along with Matt Kangus, locked me up in the county jail two different times because Matt Kangus did not like what I told him how I felt about my two cases which I really didn't want to talk about my case of 1995-CF-178 or the 08-CF-210 Cases." (Docket #16 at 4).

- "Along with Supervisor Ruth Donalds and John Langdon, and Matt Kangus who went to my job at Wendy's and told my manager that he was to let me go and I could not work there no more, and I couldn't go to any fast food service restaurants anymore while I was on probation. Discrimination ex post facto violations, along with my 1st, 5th, 8th, 14th Amendments violated, by these agents." *Id.*

Kangas testifies in his declaration that he had "no authority or ability to detain, put into custody, or 'lock up' Weiss" and he "did not correspond or have interaction with, and had no involvement in terminating Weiss' employment at a Wendy's restaurant located in Kenosha or Racine, Wisconsin, nor did [he] have any correspondence with any of Weiss' employers, ever." (Docket #49 at 2-3). As noted above, Weiss has not disputed Kangas' evidence. Based on the evidence before the Court, the Court is constrained to find that Kangas was not sufficiently involved in any deprivation of Weiss' rights to warrant liability. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach

unless the individual defendant caused or participated in a constitutional deprivation."). Kangas' motion for summary judgment will be granted.

### 4.2 The State Defendants

Weiss' remaining claims involve the state defendants' enforcement of Weiss' conditions of community supervision. The Court begins its analysis on these claims by evaluating whether, and to what extent, a Section 1983 plaintiff is entitled to challenge to the conditions of his community supervision.

The Seventh Circuit teaches, first, that a plaintiff claiming to have been revoked based on violations of allegedly unconstitutional terms of supervision, and seeking as his relief release from custody, must bring such a claim in a petition for a writ of habeas corpus. *Henderson v. Bryant*, 606 F. App'x 301, 303-04 (7th Cir. 2015).[5] Conditions of release or supervision are a form of custody, and a challenge to those conditions is an attack on the fact or duration of the plaintiff's confinement, which "is the traditional function of the writ of habeas corpus." *Drollinger v. Milligan*, 552 F.2d 1220, 1225 (7th Cir. 1977). To the extent Weiss wishes to challenge his recommitment to custody, he must file a habeas petition in a separate suit.

Further, Weiss cannot seek damages "for having been recommitted based on the violation of release conditions that he contends are unconstitutional" because "[a] successful damages claim would vitiate the

---

[5]The state defendants failed to mention *Henderson*, the most recent authority from the Seventh Circuit bearing directly on the issues raised by this case. It is not the Court's job to research arguments on a party's behalf. *Luddington v. Ind. Bell Tel. Co.*, 966 F.2d 225, 230 (7th Cir. 1992) ("If we assume lawyers' responsibilities, we unbalance the market for legal services and take time away from our consideration and decision of other cases.").

basis for his commitment, and *Heck v. Humphrey* . . . bars civil damages actions where a 'judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Henderson*, 606 F. App'x at 304 (citing *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994)). To bring such a claim, Weiss "must first have the custody invalidated, either in state proceedings or through a federal collateral attack under 28 U.S.C. § 2254, before he can refile those claims and proceed under § 1983." *Id.* (citations omitted).

Next, to the extent Weiss seeks to invalidate the conditions of which he complains so as to never again become constrained by them upon release, his challenge is premature. If Weiss were currently on community supervision, he could challenge the constitutionality of the supervision conditions through a petition for a writ of habeas corpus. *Id.* (citing *Williams v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003); *Drollinger*, 552 F.2d at 1224–25. But because Weiss is no longer subject to the conditions of his 2009-'11 community supervision, about which he complains, he cannot challenge them in this suit.

Finally, it appears that, at least in portions of Weiss' complaint, he seeks damages for having had to endure unconstitutional conditions of supervision that did *not* lead to his recommitment to custody. This is the only (narrow) avenue that could possibly afford him the relief he seeks, because "a successful damages action challenging [such] conditions . . . would not imply the invalidity of his current confinement, [and therefore] *Heck* does not bar a § 1983 claim challenging them." *Id.* However, insofar as Weiss "seek[s] damages from the defendants for enforcing release conditions that a court specifically ordered, the defendants may be protected by absolute quasi-judicial immunity, which would bar any

recovery." *Id.* (citing *Richman v. Sheahan,* 270 F.3d 430, 436–38 (7th Cir. 2001); *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1239 (7th Cir. 1986)).

The state defendants' primary argument in their summary judgment motion is that they are protected by this immunity. (Docket #41 at 5-8). The Supreme Court instructs district courts to address the merits of a defendant's immunity defense as soon as possible, and the Court will organize the remainder of its analysis accordingly. *See Siegert v. Gilley,* 500 U.S. 226, 232 (1991) ("[O]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.").

### 4.2.1   Absolute Quasi-Judicial Immunity

Absolute immunity is a complete defense to liability for monetary damages. It is "'of a rare and exceptional character[,]'" *Auriemma v. Montgomery,* 860 F.2d 273, 275 (7th Cir. 1988) (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 202 (1985)), and the presumption is against granting government officials absolute immunity, *Houston v. Partee,* 978 F.2d 362, 368 (7th Cir. 1992).

The Seventh Circuit applies a "functional approach" to determine whether a government official is entitled to absolute immunity. *Wilson v. Kelkhoff,* 86 F.3d 1438, 1443 (7th Cir. 1996). That is, courts are to look to the "nature of the function performed, not the identity of the actor who performed it" when deciding whether absolutely immunity is appropriate. *Id.* Under the functional approach, both a judge performing "truly judicial acts" as well as officials performing "functionally comparable" acts in other contexts are accorded absolute immunity. *Id.* (citing *Forrester v. White,* 484 U.S. 219, 229 (1988); *Butz v. Economou,* 438 U.S. 478, 512 (1978)). For non-

judicial officers "whose conduct is functionally comparable to those of judges, . . . the rationale for applying absolute immunity is much the same as for judges: that officials making quasi-judicial decisions should be free of the harassment and intimidation associated with litigation." *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (internal quotations omitted).

The decisions of parole board members to grant, deny, or revoke parole are absolutely immune from damages liability. *Walrath v. United States,* 35 F.3d 277, 281 (1994). In addition, activities that are "inexorably connected with the execution of parole revocation procedures and are analogous to judicial action" are also entitled to absolute immunity. *Id.* at 282 (citation omitted). For example, the Seventh Circuit affirmed application of absolute immunity for a case analyst employed by the United State Parole Commission who was accused of issuing an arrest warrant for a parole revocation without probable cause. *Walrath*, 35 F.3d at 282. In finding that the analyst was entitled to absolute immunity, the court noted that the issuing of an arrest warrant for a parole violation has many judicial characteristics: "it involves the exercise of discretion in applying the law to the facts of a particular case, poses a heightened risk of vexatious litigation, and is open to correction through ordinary mechanisms of review." *Id.*; *see also Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008) (applying immunity to the discretionary decision by a parole agent to place a "parole hold" on the plaintiff and recommend revocation for violating a condition of his parole).

By contrast, when a plaintiff challenges the *manner* in which an officer enforces a judge's decision, the "officer's fidelity to the specific orders of the judge marks the boundary for labeling the act 'quasi-judicial.'" *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001). To be sure, the line between immunized and non-immunized conduct can be very thin. For

example, in the context of parole, the Seventh Circuit has held that an officer who initiates revocation proceedings by investigating the parolee's conduct and filing a violation report is not protected by absolute immunity. *Wilson*, 86 F.3d at 1445-46. The *Wilson* court distinguished the parole agent, acting in an investigatory role, from the case analyst in *Walrath* who was immunized for issuing an arrest warrant:

> By initiating the revocation process, Kelkhoff's conduct was functionally different from the department employee accorded absolute immunity in *Walrath*. . . . The employee in *Walrath* was performing an adjudicative function by making an independent probable cause determination in deciding to issue an arrest warrant based upon evidence gathered by others. Kelkhoff, by investigating the charge and then filing the notice of charges and violation report, performed a function analogous to an employee who seeks an arrest warrant. Such conduct does not have a prosecutorial or judicial analog and, consequently, does not fall within the ambit of absolute immunity.

*Id.* at 1446 (citation omitted). In other words, an official *is not* entitled to immunity when his acts are "analogous to those of a police officer—*i.e.* investigation and reporting on offender conduct[,]" but he *is* entitled to immunity when he performs an adjudicative function such as "making a probable cause determination in deciding to issue an arrest warrant based upon evidence gathered by others[.]" *Cherry v. Husz*, No. 14-CV-1539-JPS, 2015 WL 4527978, at *5 (E.D. Wis. July 27, 2015) (citation omitted).

Some of the actions taken by the state defendants about which Weiss complains fall squarely within the class of conduct for which absolute immunity is provided. First, the state defendants are immunized from any role they had in requiring Weiss to attend sex offender treatment; such treatment is required by the Rules of Community Supervision and Standard

Sex Offender Rules applied to Weiss based on his second-degree sexual assault and stalking convictions. (Docket #42 at 5-6, 9-10); *see also Henry*, 808 F.2d at 1239 ("[P]olice officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages."). Second, the defendants named here also enjoy absolute immunity for requiring Weiss to register as a sex offender; Weiss has already unsuccessfully contested, in a previous federal lawsuit, the requirement that he register as a sex offender. *Weiss v. Dep't of Health and Family Soc. Servs. and Wis. Dep't of Corr.*, Case No. 14-CV-518 (E.D. Wis. Oct. 29, 2014) (Docket #19). The Court in that case held that Weiss is required by state law to register as a sex offender under Wisconsin Statutes section 301.45. *Id.* Absolute immunity protects the defendants for enforcing the law, confirmed by court order, that requires Weiss to register as a sex offender. Third, Langdon and Spielvogel-Donalds, the state defendants involved in placing Weiss into custody upon learning that he violated the rules of supervision by refusing to admit his sex offense during therapy, are immune from liability for that conduct, which is akin to issuing an arrest warrant based upon evidence gathered by others. *Walrath*, 35 F.3d at 282.[6]

---

[6]Even if Langdon and Spielvogel-Donalds did not enjoy absolute immunity on this claim, the claim fails for an independent reason: time has expired for Weiss to bring it. The statute of limitations for civil rights claims is six years. *Gray v. Lacke*, 885 F.2d 399, 407 (7th Cir. 1989) (courts borrow the most analogous state statute of limitations in Section 1983 actions, and in Wisconsin the six-year personal rights statute of limitations, Wis. Stat. § 893.53, applies). Civil rights claims accrue when the plaintiff knows or should know that his constitutional rights have been violated. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Weiss knew or had reason to know that his rights had been violated when he was placed in jail on February 8, 2010 for failing to admit his sex offense during therapy, meaning that his claim expired on February 8, 2016—two weeks before he brought this action.

The other conduct by the defendants about which Weiss complains does not fit as squarely within the bounds of quasi-judicial immunity because it is more "analogous to [conduct] of a police officer—*i.e.* investigation and reporting on offender conduct[,]" than to conduct of a judge or prosecutor who makes "a probable cause determination in deciding to issue [or seek] an arrest warrant based upon evidence gathered by others[.]" *Cherry*, 2015 WL 4527978, at *5.

First, Spielvogel-Donalds and Langdon do not enjoy absolute immunity for their roles in causing revocation proceedings to occur based on the allegations from Weiss' neighbor that Weiss had harassed her. Langdon personally investigated Weiss' neighbor's allegations that Weiss had forced his way into her apartment and exposed himself to her. (Docket #42 at 17). He spoke to the property company for the building where Weiss and Weiss' neighbor lived and also spoke to the neighbor before he ultimately decided, in consultation with Spielvogel-Donalds, to file a Violations Investigation Report and recommend revocation. *Id.* at 17-18. The defendants' investigation, collection of evidence, and report on such evidence is akin to a police officer's work, and does not warrant immunity. *Wilson*, 86 F.3d at 1445 ("initiating the revocation proceedings by filing the violation report and notice of charges" is not covered by absolute immunity).

Similarly, Spielvogel-Donalds and Langdon do not enjoy absolute immunity for their roles in securing the issuance of a no-contact order between Weiss and his girlfriend, Scozzoro. Langdon had face-to-face conversations with Scozzoro about her relationship with Weiss and, in light of the age difference between Weiss and Scozzoro that was similar to the age difference between Weiss and his previous victim, decided the couples'

relationship was unhealthy and inappropriate. *Id.* at 14-16. Langdon, in consultation with Spielvogel-Donalds, limited Weiss' contact with Scozzoro and ultimately forbade their contact. *Id.* As with Spielvogel-Donalds' and Langdon's collection and weighing of evidence regarding Weiss' harassment of his neighbor, their evaluation of Weiss' relationship with Scozzoro, and decision to issue a no-contact order, is not sufficiently adjudicative to warrant absolute immunity.

Next, Kuhn's placement of Weiss in a halfway house for the first month of his community supervision, where he claims to have been under house arrest in violation of his Eighth Amendment rights, also does not warrant absolute immunity. Kuhn states that she placed Weiss at the halfway house because he was estranged from his family and had no place else to go, and she did not think it appropriate to release a sex offender with a history of mental illness into the community without a placement. (Docket #42 at 13). While this decision has characteristics of adjudication, it is not clear on the facts presented that Kuhn made an "independent . . . determination . . . based upon evidence gathered by others." *Wilson*, 86 F.3d at 1446. Instead, Kuhn's decision appears to have been a typical administrative task performed by a parole agent, and the Seventh Circuit does not afford absolute immunity to a parole officer's "day-to-day duties." *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005).

Other of the defendants' challenged conduct falls closer to the line between investigatory conduct that is not entitled to absolute immunity and adjudicative conduct that is. But on the facts presented, the Court cannot find such immunity is proper at this juncture. *Wilson*, 86 F.3d at 1443 ("Absolute immunity is only accorded for limited functions; '[t]he presumption is that qualified rather than absolute immunity is sufficient to

protect government officials in the exercise of their duties.' . . . Thus, the official seeking the benefit of immunity bears the burden of proving that it is justified.") (citation omitted).

Such is the case with the decision by Kautzmann, as Weiss' agent, in consultation with Spielvogel-Donalds, to place Weiss on electronic monitoring. The defendants state in their facts and supporting declarations that an agent's decision to require location monitoring is a discretionary one. (Docket #42 at 8-9). Kautzmann decided, based on Weiss' previous stalking conviction, that electronic monitoring would help to ensure compliance with the rules of supervision concerning when Weiss was allowed to leave his home and for what reasons. *Id.* at 9. While Kautzmann's decision appears to be have been made based on evidence available to him, but not collected by him, it is not so clearly adjudicative as to warrant absolute immunity at this juncture. The immunity analysis on this issue would likely be different if electronic monitoring was court-ordered, but that fact is not before the Court here. *Richman*, 270 F.3d at 436 (an officer's fidelity to "specific orders of the judge" is quasi-judicial).

Similarly, the facts presented do not warrant absolute immunity for the roles Langdon and Spielvogel-Donalds played in causing Weiss not to be employed at a Wendy's restaurant.[7] According to the state defendants' proposed facts, "[i]t is standard policy and procedure that sex offenders on probation and parole are not allowed to be employed in places that also employ minors or that are frequented by minors, including fast food

---

[7]Weiss also claims that Kautzmann had some role to play in his termination from Wendy's, but Kautzmann affirmatively states in his declaration that he had no such involvement, (Docket #45 at 6), and Weiss has not matched that evidence with any admissible evidence of his own.

restaurants. This is prohibited for all sex offenders, even those who have committed a sex offense that did not involve minors." (Docket #42 at 6-7). Exceptions can be made if the employer can provide third-shift employment, where minors would not be eligible to work. *Id.* at 7. Neither Langdon nor Spielvogel-Donalds have a specific recollection of contacting Wendy's, but Langdon states that he informed Weiss that Weiss could only work at Wendy's if his shifts were during the night, or on third shift, and it was Langdon's practice to contact employers to advise them of the same. *Id.* at 7-8. It does not appear from the state defendants' proposed facts that the employment rule is court-ordered. While the decision by Langdon (and Spielvogel-Donalds, to the extent she approved it) to disallow Weiss from working at Wendy's has hallmarks of judicial function—applying a department policy based on the nature of the parolee's offense is similar to the role a judge plays at sentencing—it was not clearly adjudicative. It does not appear that Langdon's decision involved, for example, the weighing of evidence inherent in making a probable cause determination. *Cherry*, 2015 WL 4527978, at *5. The facts presented by the state defendants are not sufficient to warrant absolute immunity for forbidding Weiss' employment at Wendy's.

In sum, the state defendants are absolutely immune from Weiss' claims related to registering as a sex offender, attending sex offender treatment, and being placed into custody after failing to admit his offenses during that treatment. The state defendants are not absolutely immune from Weiss' claims related to (i) the initiation of revocation proceedings based on allegations from Weiss' neighbor that Weiss had harassed her; (ii) the issuance of a no-contact order between Weiss and his girlfriend, Scozzoro; (iii) Weiss' placement in a halfway house; (iv) Weiss' placement

on electronic monitoring; and (v) Weiss' ban from working day shifts at Wendy's.

But this does not mark the end of the immunity analysis. As the Seventh Circuit has explained, the doctrine of absolute immunity is intentionally narrow because, in many cases, "*qualified* immunity is generally deemed sufficient to protect a public official from vexatious litigation." *Walrath*, 35 F.3d at 281 (italics added). For the reasons explained below, the state defendants are protected by qualified immunity for the actions described above that do not fall within the scope of absolute immunity.

### 4.2.2  Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity allows for government officials to be held accountable when they exercise power irresponsibly, but also shields them from harassment, distraction, and liability when they perform their duties reasonably. *Id.*

To resolve a government official's qualified immunity claim, courts undertake two inquiries: they determine whether the facts a plaintiff has alleged make out a violation of a constitutional right and whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id. at 232.* Though the Supreme Court at one time mandated the sequence of these two inquiries, that is no longer the case. *Id.* at 236. As to the second inquiry, it is the plaintiff's burden to show that the right at issue was "clearly established under applicable law at the time and under

the circumstances that the defendant official acted." *Easterling*, 528 Fed. App'x at 656 (citing *Pearson*, 555 U.S. at 232). Courts should "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "Immunity should be applied unless 'it has been authoritatively decided that certain conduct is forbidden.'" *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991) (citation omitted).

The plaintiff offered no precedent to support a finding that he had a clearly established right not to (i) face revocation proceedings based on allegations from his neighbor that he forced himself into her apartment and exposed himself to her, (ii) be forbidden to contact his girlfriend, with whom his agents believed he had an inappropriate relationship; (iii) be placed in a halfway house upon release from custody when he had no other place to live; (iv) be placed on electronic monitoring; and (v) be forbidden to work day shifts at Wendy's. It is not even entirely clear which constitutional rights Weiss believes are implicated by these deprivations, though he mentions the First, Fifth, Eighth, and Fourteenth Amendments at various points in his complaint. (Docket #16). The Court cannot say that it has been "authoritatively decided" that the parole officers' actions, as described here, violated any of Weiss' rights.

First, as to the requirement that Weiss wear an electronic monitoring device, the Supreme Court has held that electronic monitoring of sex offenders is permitted if reasonable, *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015), and the Seventh Circuit has held that, at least for sex offenders whose victims are children, a lifetime location monitoring requirement upon conviction is constitutional, *Belleau v. Wall*, 811 F.3d 929, 932 (7th Cir. 2016). Therefore, the state defendants' discretionary decision to impose

location monitoring in Weiss' case based on his history of stalking is reasonable, and they are entitled to qualified immunity therefor.

As to Kuhn's placement of Weiss in a halfway house upon his release from custody, Weiss has not met his burden to identify clearly established precedent forbidding this action. To the contrary, the case law appears to be unclear on this issue. For example, in a recent case involving a sex offender who had reached his mandatory release date but could not secure approved housing and was therefore detained in county jail at night after his release date, the Seventh Circuit summarized the state of the relevant law and ultimately decided qualified immunity was appropriate. *Werner v. Wall*, 836 F.3d 751, 764 (7th Cir. 2016). If the law is unclear as to whether an official can keep a sex offender in jail after his release date for want of appropriate housing, certainly the law is sufficiently in flux to afford Kuhn the protection of qualified immunity for her decision to place Weiss in a halfway house under similar circumstances.[8]

As to the other conduct Weiss challenges—the decisions by Spielvogel-Donalds and Langdon to initiate revocation proceedings based on complaints of harassment by Weiss' neighbor, to forbid Weiss' contact with his much older girlfriend,[9] and to forbid daytime employment at

---

[8]Even if Kuhn did not enjoy qualified immunity on this claim, the statute of limitations has run and the claim fails for that reason as well. *Gray,* 885 F.2d at 407. Weiss knew or had reason to know that his rights had been violated when he was placed at the halfway house on December 15, 2009, meaning that his claim expired in middle December 2015—two months before he brought this action.

[9]The issue of the no-contact order is the rare instance in Weiss' summary judgment response where he seems to directly dispute facts presented by the state defendants, though not artfully. Weiss indicates that he believes Spielvogel-Donalds and Langdon sought the no-contact order because Weiss was having a sexual relationship with Scozzoro, when in fact he merely "went out to lunch and dinner" with her. (Docket #53 at 4). Even if the Court accepted this sentence in

Wendy's—the Court has simply not been directed to relevant authority establishing that the defendants clearly overstepped the constitutional bounds of their authority in making these decisions. Indeed, parole agents are generally afforded "broad discretion" in their role of ensuring parolees abide by the conditions of parole and progress toward prosocial behavior. *Morrissey v. Brewer*, 408 U.S. 471, 479 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 784 (1973) ("Because the probation or parole officer's function is not so much to compel conformance to a strict code of behavior as to supervise a course of rehabilitation, he has been entrusted traditionally with broad discretion to judge the progress of rehabilitation in individual cases, and has been armed with the power to recommend or even to declare revocation."). Absent clear indication from the courts of appeal that the defendant agents violated Weiss' rights by taking the actions Weiss challenges here, this Court is constrained to cloak the defendants' actions in qualified immunity.

Therefore, to the extent Weiss' claims against the state defendants are not barred by absolute quasi-judicial immunity, they are barred under the doctrine of qualified immunity. The state defendants' motion will be granted and all of Weiss' claims against them will be dismissed.

---

Weiss' response brief as a proper avenue to dispute a proposed fact, the immunity analysis does not change. Weiss has not provided, and the Court has not found, authority indicating that a parole agent's issuance of a no-contact order, even when based on a misunderstanding, violates a protected right of the parolee.

## 5.    CONCLUSION

For the reasons stated above, the record and the relevant authorities oblige the Court to grant the motions for summary judgment filed by Kangas[10] and the state defendants and dismiss this case in its entirety.

Accordingly,

**IT IS ORDERED** that the state defendants' motion for summary judgment (Docket #40) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendant Kangas' motion for summary judgment (Docket #47) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendant Kangas' motion for judgment on the pleadings (Docket #47) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[10]Because the Court finds summary judgment in Kangas' favor is appropriate, it need not consider Kangas' alternative request for judgment on the pleadings.